## S13A0504. WIMES v. THE STATE.
(744 SE2d 787)

NAHMIAS, Justice.

Antoine Wimes appeals his convictions for felony murder and possession of a firearm during the commission of a crime related to the shooting death of Obiakor Onyemaechi. Appellant contends that the State failed to disclose that it gave a deal or made promises to its most important witness and also failed to correct the witness's false testimony regarding the exact criminal charges pending against him. We affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. On the evening of July 13, 2008, the victim was working at a convenience store in Atlanta. According to a witness who was in the store, as the victim prepared to close for the night, a man whose face the witness never saw entered the store and bought a large t-shirt that was kept behind the counter, which was separated from the rest of the store by bulletproof glass. The t-shirt apparently would not fit through the pass-through in the counter, so the victim cracked open the door to the behind-the-counter area to give the man his shirt. The man pulled out a gun and shot the victim repeatedly, shooting once more into the store as he left. The victim was rushed to the hospital, where he died of multiple gunshot wounds to the torso. After his arrest for the victim's murder and his release on

---

[1] The crimes occurred on July 13, 2008. On May 5, 2009, a Fulton County grand jury indicted Appellant for felony murder, aggravated assault, and possession of a firearm during the commission of a crime. He was tried from August 24 through September 1, 2010, and found guilty of all charges. The trial court sentenced Appellant to life in prison for felony murder and five consecutive years for the firearm conviction; the aggravated assault conviction merged. On September 7, 2010, Appellant filed a motion for new trial, which he amended on August 8 and 10, 2012. After an evidentiary hearing, the trial court denied the motion on September 18, 2012. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

bond, Appellant cut off his GPS ankle monitor and attempted to flee to Alabama, shooting a family friend and attempting to rob her in the process.

At trial, a statement made to the police by Appellant's friend Jerrod Ford, in which Ford said that Appellant had told him about his plan to rob the store, was admitted into evidence after Ford testified that Appellant had not told him that. Another friend of Appellant, Christopher James, testified that Appellant had admitted shooting the victim in an attempted robbery. Appellant presented an alibi defense.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant argues first that reversal of his convictions is required because the State made an undisclosed deal with Christopher James, or at least made him undisclosed promises, in exchange for his testimony against Appellant.

[T]he state is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

*Younger v. State*, 288 Ga. 195, 200 (702 SE2d 183) (2010) (citations and punctuation omitted). See also *Giglio v. United States*, 405 U. S. 150, 154-155 (92 SCt 763, 31 LE2d 104) (1972) (holding that the government's failure to disclose a promise made to its key witness that he would not be prosecuted if he testified against the defendant violated due process). As the factual premise for this argument, Appellant notes that at the time of this trial, James was facing charges of armed robbery and aggravated assault in a separate case; that when James initially took the witness stand, he refused to testify until he spoke with his attorney; and that six weeks after the trial, he pled guilty to robbery, rather than armed robbery, along with the

aggravated assault. Appellant suggests that an undisclosed agreement between James and the State should be inferred from these circumstances.

However, during his testimony at trial, James unequivocally denied that any deal or promises existed with regard to his pending charges. Moreover, at the motion for new trial hearing, both the lead prosecutor and James's attorney testified that there was no deal between the State and James and that the State did not make James any promises for his testimony. Based on this testimony, the trial court found that there was no agreement between the State and James in exchange for his testimony. Appellant has failed to show that this factual finding was clearly erroneous, and indeed it is fully supported by the evidence. See *Beam v. State*, 265 Ga. 853, 855-856 (463 SE2d 347) (1995) ("[I]t is clear from the statements of the [witness]'s former attorney and both prosecutors of the murder charge against Beam that there was no deal made in exchange for the [witness]'s testimony against Beam in that case. The subsequent disposition of charges against the [witness], standing alone, does not establish the existence of a deal." (citation omitted)). This enumeration of error has no merit.

3. Appellant also argues that his convictions must be reversed because the State failed to correct James's testimony that he was charged with robbery, and not armed robbery. It is true that " '[c]onviction of a crime following a trial in which perjured testimony on a material point is knowingly used by the prosecution is an infringement on the accused's Fifth and Fourteenth Amendment rights to due process of law.' " *Al-Amin v. State*, 278 Ga. 74, 82 (597 SE2d 332) (2004) (citation omitted). See also *Napue v. Illinois*, 360 U. S. 264, 269 (79 SCt 1173, 3 LE2d 1217) (1959). But that is not the situation here.

The length of the prison time that a witness faces if convicted of pending criminal charges may be relevant to impeaching the witness, to the extent that it indicates the strength of his motivation to testify favorably for the State, although the trial court retains wide latitude to impose reasonable limits on cross-examination in this area. See *Manley v. State*, 287 Ga. 338, 340-343 (698 SE2d 301) (2010). And armed robbery does carry a maximum sentence of life in prison compared to the maximum of 20 years in prison for robbery and for aggravated assault.

However, while James's testimony that he was charged with robbery, rather than armed robbery, was inaccurate, Appellant has not shown that it was perjured or material. To begin with, the question is not what charges and sentences James *actually* faced, but what he *believed* about his predicament, because " 'witnesses cannot be influenced by matters about which they are unaware.' " *Manley*,

287 Ga. at 343 (citation omitted). Appellant did not elicit at trial or in the motion for new trial hearing any evidence that James *knew* he was facing an armed robbery charge, much less that he knew that the maximum sentence for such a charge was higher than the sentence for robbery, so there is no showing that the armed robbery fact was relevant to James's credibility. In other words, the record indicates that James testified honestly about the charges he believed he was facing, although his belief was inaccurate. The State had no obligation to educate James about the armed robbery charge, thereby giving him greater reason to potentially shade his testimony to please the prosecution.

Moreover, Appellant was allowed to cross-examine James extensively and to elicit the facts that James was facing serious criminal charges — robbery and aggravated assault — and knew that he could be sentenced to up to 20 years in prison on each charge. Because James had no agreement with the State regarding his charges or sentences, see Division 2 above, and thus Appellant could not elicit from him " ' "objective evidence" of the disparity between the sentence the witness will get as a result of his cooperation and the sentence he faced had he not cooperated, as opposed to the witness's mere hope for or speculation about the possibility of a lower sentence,' " *Manley*, 287 Ga. at 340-341 (citations omitted), the trial court would have been within its discretion to exclude questions about *any* of the specific sentences that James faced. See *Howard v. State*, 286 Ga. 222, 225-226 (686 SE2d 764) (2009).

Under these circumstances, Appellant was not entitled to have James's apparently honest but inaccurate testimony that he faced a robbery charge corrected by the State, and the trial court actually allowed Appellant more leeway in cross-examining James than the law requires. This enumeration of error is therefore also without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 17, 2013 —
RECONSIDERATION DENIED JULY 11, 2013.

*Kenneth D. Kondritzer*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker, Joshua D. Morrison*, Assistant District Attorneys, *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *David A. Bikoff*, Assistant Attorney General, for appellee.